# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| PAMELA D. WHITAKER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MONROE STAFFING SERVICES, )<br>LLC and STAFFING 360 )<br>SOLUTIONS, INC., )<br>)<br>Defendant. ) | 1:20CV012 |

### MEMORANDUM OPINION AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on Defendants' Motion to Dismiss (Docket Entry 9), Plaintiff's Motion to Remand to State Court (Docket Entry 16), and Plaintiff's Motion to Amend Complaint (Docket Entry 23).

**I.  BACKGROUND**

The matter arises from a contract dispute between Plaintiff Pamela D. Whitaker and Defendants Monroe Staffing Services, LLC ("Monroe") and Staffing 360 Solutions, Inc. ("Staffing 360").  In her Complaint, Plaintiff asserts that, on or about August 27, 2018, Plaintiff and Defendants entered into an agreement ("the Agreement") whereby Defendant Monroe agreed to purchase from Plaintiff all issued and outstanding shares of Key Resources, Inc. and Defendant Staffing 360, the parent company of Defendant Monroe, guaranteed payment. (Complaint ¶ 4, Docket Entry 5.)  Pursuant to the Agreement, Defendants were to make scheduled earnout payments to Plaintiff.  (*Id.* ¶ 6.)  However, Defendants failed to make the first payment.  (*Id.* ¶ 7.)  Subsequently, the parties entered into an "Amendment Agreement"

on or about September 11, 2019, whereby Defendants were to make one payment of $2,027,198 no later than November 29, 2019 and another payment of the same amount no later than February 27, 2020.[1] (*Id.*) Defendants again failed to make the payments. (*Id.*) Instead, on November 25, 2019, Defendants allegedly "notified [P]laintiff of a potential buyer setoff claim."[2] (*Id.* ¶ 8.)

Based on these allegations, Plaintiff filed the present lawsuit on December 5, 2019 in the Superior Court of Guilford County, North Carolina alleging breach of contract claim and seeking damages and declaratory relief. (Docket Entry 5.) Defendants removed this action to the United States District Court for the Middle District of North Carolina on January 7, 2020. (Docket Entry 1.) On January 14, 2020, they filed the instant motion to dismiss. (Docket Entry 9.) Plaintiff filed a response in opposition on February 4, 2020 (Docket Entry 14), and Defendants filed a reply on February 18, 2020 (Docket Entry 20).

On February 4, 2020, Plaintiff filed the instant motion to remand to state court. (Docket Entry 16.) Defendants filed a response in opposition on February 10, 2020 (Docket Entry 18) and Plaintiff filed a reply on February 24, 2020 (Docket Entry 21).

On February 26, 2020, Defendants filed a complaint alleging fraudulent inducement and breach of contract by Plaintiff in the United States District Court for the Southern District

---

[1] At the time Plaintiff commenced this action, the February 27, 2020 deadline for the second payment had not yet passed. (*See* Docket Entry 5.)

[2] As discussed below, Defendants dispute Plaintiff's characterization of this communication. (*See* Docket Entry 10 at 5-6; Docket Entry 18 at 9-10.)

2

of New York. (Docket Entry 25 at 7, n.4 (citing *Staffing 360 Solutions v. Whitaker*, No. 1:20-cv-01716-GBD (S.D.N.Y. Feb. 26, 2020).)

On February 28, 2020, Plaintiff filed the instant motion to amend her complaint. (Docket Entry 23.) Defendants filed a response in opposition on March 19, 2020 (Docket Entry 25) and Plaintiff filed a reply on April 2, 2020 (Docket Entry 26).

## II. DISCUSSION

### A. Defendants' Motion to Dismiss

Defendants argue that dismissal is appropriate pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure. (Docket Entry 9 at 1.) Specifically, Defendants argue that: 1) this Court lacks personal jurisdiction over Defendant Staffing 360; 2) the Complaint should be dismissed because a forum selection clause in the Agreement requires that this action be brought in New York, New York; and 3) the Complaint fails to state viable claims for relief. (Docket Entry 10 at 10, 13, 17.) Additionally, Defendants argue in the alternative that this case should be transferred to United States District Court for the Southern District of New York pursuant to the forum selection clause and 28 U.S.C. § 1404(a). (*Id.* at 21.)

#### 1. Choice of Law

As a preliminary matter, the undersigned concludes that New York state law governs the interpretation of the Agreement. Because this case is before a federal court in North Carolina based on a diversity jurisdiction, the Court must apply North Carolina's choice-of-law rules. *See Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 599-600 (4th Cir. 2004) ("A federal court exercising diversity jurisdiction is obliged to apply the

3

substantive law of the state in which it sits, including the state's choice-of-law rules.") (citations omitted). Under North Carolina law, "where parties to a contract have agreed that a given jurisdiction's substantive law shall govern the interpretation of the contract, such a contractual provision will be given effect." *Tanglewood Land Co. v. Byrd*, 299 N.C. 260, 262, 261 S.E.2d 655, 656 (N.C. 1980). Here, the Agreement between the parties provides that "[t]his Agreement, and all matters arising out of or relating to this Agreement, shall be governed and construed in accordance with the internal laws of the State of New York, without giving effect to any choice or conflict of law provision or rule (whether of the State of New York or any other jurisdiction)."[3] (Section 8.08, Docket Entry 11-2 at 7.) Therefore, New York state law applies for the purpose of construing the Agreement.

## 2. The Forum Selection Clause

Section 8.08 of the Agreement between the parties contains a forum selection clause. It provides that

> [a]ny legal suit, action, proceeding, or dispute arising out of or related to this Agreement, the other transaction documents, or the transactions contemplated hereby or thereby may be instituted in the federal courts of the United States of America or the courts of the State of New York in each case located in the city and county of New York, and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action, proceeding, or dispute. Notwithstanding the foregoing, any legal suit, action, proceeding, or dispute arising out of or relating to a Buyer setoff pursuant to Section 7.08 and Seller's dispute relating thereto may be instituted in the federal courts of the United States of America located in the Middle District of North Carolina or the courts of the State of North Carolina

---

[3] This provision, along with the forum selection clause is incorporated into the Amendment Agreement. (Docket Entry 11-3 at 1.)

4

> located in Guilford County, in either case applying New York
> law, and such forum selection by Seller shall be controlling.

(*Id.* at 7-8.) As explained below, the forum selection clause and the facts of this case require that this matter be litigated in the United States District Court for the Southern District of New York. The undersigned will therefore recommend that this matter be transferred to that venue.[4]

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). When considering a motion to transfer venue under this statute, "the Supreme Court has held that the validity of a forum selection clause is to be determined under federal law." *Rice v. Bellsouth Advert. & Pub. Corp.*, 240 F. Supp. 2d 526, 528 (W.D.N.C. 2002) (citing *Stewart Org., Inc., v. Ricoh Corp.*, 487 U.S. 22, 32 (1988)). The Fourth Circuit has stated that "[a] general maxim in interpreting forum-selection clauses is that an agreement *conferring* jurisdiction in one forum will not be interpreted as *excluding* jurisdiction elsewhere unless it contains specific language of exclusion." *IntraComm, Inc. v. Bajaj*, 492 F.3d 285, 290 (4th Cir. 2007) (internal quotations and citation omitted) (emphasis in original). As such, the clause can be either mandatory or

---

[4] The undersigned recommends transfer, rather than dismissal, of this matter. "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). "Specifically, the 'interest of justice' requires 'removing whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits.'" *The Hipage Co., Inc. v. Access2Go, Inc.*, 569 F. Supp. 2d 602, 613 (E.D. Va. 2008) (quoting *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962). Transfer is expeditious relative to dismissal of Plaintiff's complaint as it would allow for expeditious adjudication of Plaintiff's claims on their merits. Additionally, in light of recommending the transfer of venue, the undersigned has not reached the merits of Defendants' other arguments in their motion to dismiss. The Court therefore should deny the motion to dismiss with regard to those arguments.

permissive. *Turfworthy, LLC v. Dr. Karl Wetekam & Co. KG*, 26 F. Supp. 3d 496, 505 (M.D.N.C. 2014). "A mandatory forum-selection clause provid[es] the designated forum with exclusive jurisdiction over any disputes, whereas a permissive forum-selection clause provid[es] the designated forum with jurisdiction over the parties, but not necessarily exclusive jurisdiction." *AM-Rail Constr., Inc. v. A&K R.R. Materials, Inc.*, No. 1:16CV520, 2017 WL 414382, at *4 (M.D.N.C. Jan. 31, 2017) (internal quotations and citation omitted) (unpublished).

The parties dispute whether the forum selection clause at issue here is mandatory.[5] (Docket Entry 10 at 13-17; Docket Entry 14 at 11-12.) The undersigned concludes that it is given the language that "each party *irrevocably* submits to the *exclusive jurisdiction* of [the federal and state courts located in the city and county of New York]." (Section 8.08, Docket Entry 11-2 at 8 (emphasis added).) Courts have routinely held that such language renders a forum

---

[5] Mandatory forum selection clauses are presumptively valid, "[b]ut the presumption of enforceability that forum selection and choice of law provisions enjoy is not absolute and, therefore, may be overcome by a clear showing that they are unreasonable under the circumstances." *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) (internal quotations omitted) The Fourth Circuit has held that a forum selection clause may be unreasonable if

> (1) [its] formation was induced by fraud or overreaching; (2) the complaining party "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) [its] enforcement would contravene a strong public policy of the forum state.

*Allen*, 94 F.3d at 928. "The party opposing enforcement of the forum-selection clause bears the burden of showing that enforcement is unreasonable." *AM-Rail*, 2017 WL 414382, at *5. Here, Plaintiff does not contend that the forum selection clause is unreasonable, but merely disputes whether the New York provision is mandatory and whether the New York or North Carolina provisions govern. (*See* Docket Entry 14 at 7.) The undersigned therefore need not determine whether the forum selection clause is unreasonable.

6

selection clause mandatory. *See, e.g., Overseas Ventures, LLC v. ROW Mgmt., Ltd., Inc.*, No. 12 Civ. 1033 (PAE), 2012 WL 5363782, at *4 (S.D.N.Y. Oct. 26, 2012) (holding that a forum selection clause that states that each party "irrevocably agrees to submit to the exclusive jurisdiction" of a court "is classically mandatory"). The clause's use of the word "may" "does not negate the mandatory nature of the forum selection clause." *See Fear & Fear, Inc., v. N.I.I. Brokerage, L.L.C.*, 851 A.D.3d 185, 188, 851 N.Y.S.2d 311, 313 (N.Y. 2008).

The parties also dispute whether the forum selection clause requires this matter be litigated in New York or North Carolina. The forum selection clause clearly provides that any action arising out of or relating to the Agreement must be brought in state or federal court in the city and county of New York, with the exception that a claim arising from or related to a buyer setoff by Defendants may be brought by Plaintiff in state court in Guilford County, North Carolina or the United States District Court for the Middle District of North Carolina. (*See* § 8.08, Docket Entry 11-2 at 7-8.) In other words, if this action does not arise from or relate to a setoff claim by Defendants, it must be litigated in state or federal court in New York County, New York.

Plaintiff argues that her claims "relate to" a setoff claim by Defendants, which permits her to bring suit in state court in Guilford County, North Carolina and binds the other parties to that forum once chosen. (Docket Entry 15.) New York state courts have routinely read the language similar to "any legal suit, action, proceeding, or dispute arising out of or relating to" as expansive.[6] *See In re. Solkav Solartechnik, G.m.b.H (Besicorp Group, Inc.)*, 91 N.Y.2d 482,

---

[6] As discussed above, New York state law governs the construction of the Agreement's language. However, the undersigned notes here that federal courts, including the Supreme Court of the United States, have characterized similar language as broad. *See, e.g., Prima Paint Corp. v. Flood &*

7

484, 695 N.E.2d 707, 707, 672 N.Y.S.2d 838, 838 (N.Y. 1998) (characterizing as "broad" an arbitration clause that contained language that "[a]ny controversy or claim arising out of or relating to . . ."), *superseded on other grounds by statute*, CPLR § 7502(a)(iii), *as recognized in In re Gleason (Michael Vee, Ltd.)* 96 N.Y.2d 117, 749 N.E.2d 724, 726 N.Y.S.2d 45 (N.Y. 2001); *Nat'l Equip. Rental Ltd. v. Am. Pecco Corp.*, 28 N.Y.2d 639, 641, 269 N.E.2d 373, 38, 20 N.Y.S.2d 248, 249 (N.Y. 1971) (per curiam) (characterizing an arbitration clause's language that "[a]ny controversy or claim arising out of or relating to this Agreement" as broad); *Potoker v. Brooklyn Eagle Inc.*, 2 N.Y.2d 553, 560, 141 N.E.2d 841, 844, 161 N.Y.S.2d 609, 613 (NY 1957) (characterizing an arbitration clause's language that "any dispute . . . arising of or relating to" as "broad and comprehensive").

Plaintiff provides two bases for her argument that this action is related to a setoff claim. First, she relies on a November 25, 2019 letter she received from counsel for Defendants. The letter notified Plaintiff that Defendants were investigating alleged misrepresentations made by Plaintiff to Defendants under the Agreement. (Docket Entry 11-4 at 2.) The letter then stated

> Although the investigation is continuing, in light of the foregoing, and in an abundance of caution, we hereby provide you with notice, pursuant to Sections 7.03 and 7.09 of the SPA, of Staffing 360's claim with respect to the conduct described above . . . [.] Such claims may include, but not be limited to, claims with respect to Sections 3.01(b), 3.02, 3.15, 3.19, 3.20, and Article VI of the [Agreement], as well as such other and further claims as may be provided for by law. We further provide you with notice, pursuant to Section 7.08 of the [Agreement], that Staffing 360 reserves all rights to setoff any penalties, liabilities, or damages arising as a result of any fraudulent conduct and/or breaches of the [Agreement] by you (or Key) against any Earnout Payments that would otherwise be owed to you.

---

*Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967) (characterizing an arbitration clause that provided that "[a]ny controversy or claim arising out of or relating to this Agreement" as broad).

8

(*Id.* at 3.) While the parties have not submitted a complete copy of the Agreement or a partial copy that contains § 7.08, Defendants have represented to the Court that the provision requires Defendants to articulate "(1) the basis for why the Buyer believes it is entitled to setoff, (2) the alleged amount owed (the 'Setoff Amount') along with a calculation showing the basis for such Setoff Amount, and (3) reasonable documentation supporting the Setoff Amount."[7] (Docket Entry 18 at 10, n.3.)

Defendants argue that the letter does not actually give notice of a setoff claim. (*Id.* at 9-10.) The undersigned agrees. The letter, which is partially quoted above, only briefly mentions that Defendants have not waived their right to a setoff under § 7.08 and fails to articulate the information Defendants are required to provide in order to exercise one. (*See* Docket Entry 11-4; Docket Entry 18 at 10 n.3.) Whether Defendants opt to claim a setoff is, at this point, speculative. The undersigned additionally notes that the letter, and the threat of a setoff claim, is discussed only for a single sentence in Plaintiff's Complaint, which otherwise is mostly dedicated to Defendants' failure to pay Plaintiff in alleged breach of the Agreement and Amendment Agreement.[8] (Complaint ¶ 8 ("On or about November 25, 2019, defendants notified plaintiff of a potential buyer setoff claim.").) The undersigned acknowledges that the

---

[7] Plaintiff does not dispute this language in her subsequent filing. (*See* Docket Entry 19.)

[8] The Complaint also provides that this action "involves a dispute relating to a potential buyer setoff." (Complaint ¶ 5.) Additionally, Plaintiff's proposed amended complaint provides slightly more information, alleging that "[s]ince sending the November 25, 2019 letter, defendants' representative has asserted in conversations with plaintiff to have a valid setoff claim and the right to withhold the Earnout Payments based on this claim." (Amended Complaint ¶ 13, Docket Entry 22.) However, even if Plaintiff's motion to amend were granted (Docket Entry 23), the undersigned concludes that this would still be insufficient to fairly characterize this action as relating to a setoff.

9

term "relating to" is broad and can capture many ancillary disputes between the parties to the Agreement.[9]  However, it is not so broad to reach the dispute here.  The dispute as alleged in the Complaint describes a standard breach of contract issue and any buyer setoff issue is extremely peripheral.  (*See id.*)

Plaintiff next argues that, because she is suing for a declaration of the parties' rights under the Agreement, and the Agreement includes a setoff provision, this action relates to a setoff.  (Docket Entry 17 at 4-5.)  While the undersigned will not decide here the merits of Plaintiff's claim seeking declaratory judgment, it is noted that Plaintiff merely realleges the same facts that that claim as her breach of contract claim.  (Complaint ¶ 10.)  "Many courts have previously recognized that a declaratory judgment does not serve a useful purpose where that purpose is only to resolve an already-existing breach of contract claim."  *Sprint Commc'ns Co., L.P. v. FairPoint Commc'ns, Inc.*, No. 3:16–CV–00820–GCM, 2017 WL 2919015, at *6 (W.D.N.C. July 7, 2017) (collecting cases).  Because the declaratory judgment claim here is duplicative of the breach of contract claim, and because the undersigned has already noted that the breach of contract claim does not relate to a setoff, the Court should not permit

---

[9] Plaintiff relies primarily on *Prod. Res. Group v. Martin Prof'l*, 907 F. Supp. 2d 401, 412 (S.D.N.Y 2012) for the proposition that "relating to" is a broad term that even encompasses the invocation of possible invocations of a defense. (Docket Entry 21 at 2-3 (citing *Prod. Res. Group* at 415).)  Because a setoff is a potential defense that can be asserted by Defendants, Plaintiff argues, this action relates to a setoff.  However, the undersigned is unconvinced by this argument for several reasons.  First, the Court in *Prod. Res. Group* was a federal district court that opted to apply federal common law, not New York state law,  (*id.* at 409, 414-15) and is therefore not binding on this Court.  Second, it is not clear that a setoff claim necessarily constitutes a defense under New York law.  *See Killian v. Captain Spicer's Gallery, LLC*, 140 A.D.3d 1764, 1765, 33 N.Y.S.3d 650, 651 (N.Y. App. Div. 2016) (citing *Kivort Steel, Inc. v. Liberty Leather Corp*, 110 A.D.2d 950, 952, 487 N.Y.S.2d 877, 878 (N.Y. App. Div. 1985)) ("Whether setoff is an affirmative defense . . . or is more akin to a counterclaim . . .").

Plaintiff to use the claim for declaratory judgment to broaden the controversy here to include a setoff claim.

This matter therefore does not relate to a setoff. The forum selection clause requires that this matter be transferred to the United States District Court for the Southern District of New York. The undersigned therefore recommends that Defendants' motion to dismiss (Docket Entry 9) be granted with regard to Defendants' request to transfer this matter and denied in all other regards without prejudice to Defendants' raising those arguments again in the Southern District of New York.

### B. Motion to Remand

For the reasons discussed above, Plaintiff's motion to remand to state court (Docket Entry 16) should be denied.

### C. Motion to Amend

Having concluded that this matter should be transferred to the United States District Court for the Southern District of New York, the undersigned recommends that Plaintiff's motion to amend complaint (Docket Entry 23) be left to the discretion of the transferee court.

### III. CONCLUSION

**IT IS THEREFORE RECOMMENDED** that Defendants' Motion to Dismiss (Docket Entry 9) be **GRANTED** with respect to their request to transfer the forum. This matter shall be transferred to the United States District Court for the Southern District of New York.

**IT IS FURTHER RECOMMENDED** that Defendants' Motion to Dismiss (Docket Entry 9) be **DENIED** in all other regards without prejudice to Defendants raising those arguments in the United States District Court in the Southern District of New York.

**IT IS FURTHER RECOMMENDED** that Plaintiff's Motion to Remand to State Court (Docket Entry 16) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Plaintiff's Motion to Amend Complaint (Docket Entry 23) be left to the adjudication of the transferee court.

_____
Joe L. Webster
United States Magistrate Judge

June 25, 2020
Durham, North Carolina